## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

May 3, 2012

Anthony R. Mignini, Esq.
Mignini & Raab, LLP
2015 Emmorton Road, Suite 202
Bel Air, MD  21015

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Tena Caleb Reynolds v. Michael J. Astrue, Commissioner**
**of Social Security, PWG-10-886**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Tena Reynolds' claim for Disability Insurance Benefits ("DIB"). (ECF Nos. 8,13,20). Plaintiff also filed a Response to the Defendant's Motion. (ECF No. 21). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court **GRANTS** the Commissioner's Motion and **DENIES** the Plaintiff's Motion.

Tena Caleb Reynolds (sometimes referred to as "Ms. Reynolds", "Plaintiff", or "Claimant"), applied for DIB on September 7, 2007, alleging that she was disabled since June 1, 2006, due to anxiety, depression, mood swings, back and leg pain and numbness. (Tr. 111-115, 161). Her claim was denied initially and upon reconsideration.(Tr. 65-66). A hearing was held before an Administrative Law Judge ("ALJ"), the Honorable Judith A. Showalter on June 3, 2009, where Ms. Reynolds appeared with counsel and testified. The ALJ subsequently denied her claim in a decision dated September 4, 2009. (Tr. 10-29). The ALJ found

that although Ms. Reynolds' depressive disorder, bipolar
disorder, and degenerative disc disease of the lumbar spine were
"severe" impairments, as that term is defined in the
Regulations, they did not meet or medically equal any of the
listed impairments ("the Listings") found in the Regulations.
(Tr. 12).   The ALJ also determined that Ms. Reynolds retained
the residual functional capacity ("RFC") to perform a range of
light work. (Tr. 16).   The ALJ found that Claimant was not able
to perform any of her past relevant work ("PRW").  However
considering her age, education, work experience, RFC and after
receiving testimony from a vocational expert("VE"), the ALJ
determined there were jobs in the local and national economies
that she could perform.   Accordingly, the ALJ found that Ms.
Reynolds was not disabled. (Tr. 29).  On March 12, 2010, the
Appeals Council denied Claimant's request for review, making her
case ready for review. (Tr. 1-4).

Ms. Reynolds presents several arguments in support of her
contention that the ALJ's decision is not supported by
substantial evidence.   *See* Plaintiff's Memorandum, pp. 13-26.
For the reasons that follow, I disagree.

Claimant's first argument is that the ALJ erred at step
three of the sequential evaluation because she failed to find
that Claimant's mental conditions met, or medically equalled,
Listing 12.04.   After careful review of the record I find the
ALJ's finding at step three is supported by substantial
evidence.  Listing 12.04, in relevant part, provides:

> 12.04 *Affective Disorders*: Characterized by a
> disturbance of mood, accompanied by a full or partial
> manic or depressive syndrome. Mood refers to a
> prolonged emotion that colors the whole psychic life;
> it generally involves either depression or elation.
> The required level of severity for these disorders is
> met when the requirements in both A and B are
> satisfied, or when the requirements of C are
> satisfied.
> A. Medically documented persistence, either continuous
> or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of
> the following:
> > a. Anhedonia or pervasive loss of interest in
> > almost all activities; or

2

        b. Appetite disturbance with change in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or
        f. Feelings of guilt or worthlessness; or
        g. Difficulty concentrating or thinking; or
        h. Thoughts of suicide; or
        i. Hallucinations, delusions, or paranoid
        thinking; or
2. Manic syndrome characterized by at least three of
the following:
        a. Hyperactivity; or
        b. Pressure of speech; or
        c. Flight of ideas; or
        d. Inflated self-esteem; or
        e. Decreased need for sleep; or
        f. Easy distractibility; or
        g. Involvement in activities that have a high
        probability of painful consequences which are not
        recognized; or
        h. Hallucinations, delusions or paranoid
        thinking; or
3. Bipolar syndrome with a history of episodic periods
manifested by the full symptomatic picture of both
manic and depressive syndromes (and currently
characterized by either or both syndromes);
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living;
or
2. Marked difficulties in maintaining social
functioning; or
3. Marked difficulties in maintaining concentration,
persistence, or pace; or
4. Repeated episodes of decompensation, each of
extended duration;

*See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.(As of April
1, 2008)(emphasis added).

    The ALJ stated that she considered the criteria of Listing
12.04. (Tr. 17). In accordance with the special technique that
must be followed when evaluating mental impairments, the ALJ
found that Claimant had "mild" limitations in activities of
daily living; a "moderate" limitation in social functioning; and
a "moderate" limitation in the area of concentration,

persistence, and pace and experienced no episodes of decompensation.  (Tr. 14).

Claimant contends that Dr. Anna Klump's report supports her argument that she meets the criteria in subsection B, because the doctor stated Ms. Reynolds suffered from "marked" difficulties in the various areas of functioning.  The record reflects that on December 15, 2008 Dr. Klump completed a Psychiatric Evaluation Form in which she stated that Ms. Reynolds had "marked" difficulties in planning daily activities; "marked to extreme" limitations in communicating clearly and effectively; and "marked" difficulties in getting along with family, strangers, and in initiating social contact. See Exhibit 17-F (Tr. 335-336).  Ms. Reynolds insists that Dr. Klump's report constitutes substantial evidence of meeting Listing 12.04 and it is consistent with the treatment notes submitted from Upper Bay counseling. *See* Plaintiff's Mem., p. 16-18.

However in explaining why she was according Dr. Klump's report little weight, the ALJ discussed evidence in Ms. Reynolds' treatment records that conflicted with the limitations proposed by Dr. Klump.  For example, the ALJ cited Ms. Reynolds' report to her therapist that her depression and anxiety were "not as bad" in July 2008.  Ms. Reynolds also reported that her medications were helping her manage her depression in November 2008. (Tr. 15, 423, 453).  In sum, I find that the ALJ's decision to afford Dr. Klump's opinion little weight and the ALJ's findings at step three are supported by substantial evidence and were reached by employing proper legal standards. Accordingly, the Commissioner's decision must be upheld. *See* 42 USC §405(g); *Craig,* 76 F.3d at 589; *Coffman,* 829 F.2d at 517.

Ms. Reynolds also argues that the ALJ improperly rejected the opinions of her treating physician, Dr. Frank Falco.  On June 2, 2009, Dr. Falco completed a functional questionnaire, in which he stated, among other things, that due to her lumbar disc disease and low back pain, Claimant was prevented from lifting more than 2 pounds on a frequent basis; she could stand and walk for no longer than 4 hours in an 8-hour work day; and she could never climb, balance, stoop, crouch, or crawl.  (Tr. 486-487).

The ALJ stated that she considered all the medical records, including those from the Mid Atlantic Spine Center, the medical facility where Dr. Falco treated Ms. Reynolds. (Tr. 20-21, 340-415).  The ALJ cited Exhibit 21F, as well as other exhibits, and discussed the doctor's treatment notes which stated that Ms.

Reynolds reported that she received relief from lumbar epidural
injections.  The doctor's physical examinations revealed that
Ms. Reynolds had normal muscle strength and tone, and that there
were no neuro sensory or motor deficits. (Tr. 21, 377, 486-487).
The ALJ concluded that Dr. Falco's contemporaneous treatment
notes were inconsistent with the limitations listed in the
functional questionnaire he completed one year later in 2009.
(Tr. 26).

A treating physician's opinion is given controlling weight
when two conditions are met: 1) it is well-supported by
medically acceptable clinical laboratory diagnostic techniques;
and 2) it is consistent with other substantial evidence in the
record. *See Craig* v. *Chater,* 76 F.3d 585 (4th Cir. 1996); *see
also* 20 CFR §404.1527(d)(2).  While treating source opinions on
issues reserved to the Commissioner--such as determining a
claimant's RFC--are not entitled to controlling weight, the ALJ
still must evaluate all of the evidence in the case record to
determine the extent to which the opinion is supported by the
record.

In this case, the ALJ fulfilled her duty.  Contrary to
Claimant's argument, I find that the ALJ adequately discussed
Dr. Falco's opinions in her decision and the ALJ's findings are
explained adequately and are supported by substantial evidence.
For example, on several occasions Dr. Falco observed that Ms.
Reynolds had normal muscle strength in her upper and lower
extremities, and Ms. Reynolds reported that she received some
relief from the epidural injections and pain medications. (Tr.
383, 385, 389, 391).  Therefore the ALJ's decision to accord
"little weight" to Dr. Falco's opinion that Claimant was
substantially limited in her abilities to perform work related
tasks is supported by substantial evidence.

Ms. Reynolds' third argument is that the ALJ impermissibly
engaged in "sit and squirm jurisprudence" in determining her
credibility. *Jenkins v. Sullivan*, 906 F. 2d 107, 108 (4th Cir
1990)(Finding that it is improper for an ALJ to discount
testimony about pain solely on observations of claimant at
hearing).  Ms. Reynolds argues that the ALJ's comment regarding
her personal observations of her ability to function during the
60 minute hearing was improper.

The Claimant's argument is without merit.  The ALJ fully
and adequately explained her credibility determination. *See* SSR

96-7p[1]. In determining Claimant's credibility and the impact
that her alleged impairments had on her ability to work, the ALJ
noted that Ms. Reynolds' testimony and her demonstration of
normal memory and concentration at the hearing. (Tr. 18-19).
However, the ALJ's inquiry did not end there.  The ALJ also
stated that she considered Ms. Reynolds' medical records,
including the results of her MRI's, her x-ray films, and the
medications she is taking, and explained in sufficient detail
why she found Ms. Reynolds' subjective complaints not wholly
credible. (Tr. 18-21).  In sum, these factors, were
appropriately considered, and they provide substantial support
for the ALJ's conclusion.

     Claimant's final argument that the ALJ failed to consider
the combination of all of her alleged impairments
is also without merit. In determining Ms. Reynolds' RFC for less
than a full range of light work, the ALJ adequately explained
her evaluation of the combined effects of Claimant's impairments
both Claimant's physical and mental impairments. *Walker v.
Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For example, the ALJ
included Ms. Reynolds' inability to climb ladders, ropes, or
scaffolds, and the ALJ recognized that she could not perform

---

[1] SSR 96-7p, in relevant part, states:
4. In determining the credibility of the individuals statements
the adjudicator must consider the entire case record, including
the objective medical evidence, the individual's statements
about symptoms, statements and other information provided by
treating or examining physicians or psychologists or other
persons about symptoms with the rest of the relevant evidence in
the case record in reaching a conclusion about the credibility
of the individual's statements if a disability determination or
decision that is fully favorable to the individual cannot be
made solely on the basis of objective medical evidence.
5. It is not sufficient for the adjudicator to make a single,
conclusory statement that "the individuals allegations have been
considered or that the allegations are (or are not) credible."
It is also not enough for the adjudicator to simply recite the
factors that are described in the regulations for evaluating
symptoms.  The determination or decision must contain specific
reasons for the finding on credibility, supported by the
evidence in the case record and must be sufficiently specific to
make clear to the individual and to any subsequent reviewers the
weight the adjudicator gave to the individuals statements and
the reasons for that weight. (1996 WL 374186 *1-*2) (emphasis
added).

work that required more than occasional contact with co-workers
or supervisors. (Tr. 16).  Therefore I find there is substantial
evidence that the ALJ properly considered the combination of all
her alleged impairments.

    Thus, for the reasons given, this Court GRANTS the
Commissioner's Motion for Summary Judgment and DENIES Claimant's
Motion.  A separate Order shall issue.

                    Sincerely,

                    /s/
                    Paul W. Grimm
                    United States Magistrate Judge